T.C. Memo. 2007-302

UNITED STATES TAX COURT

STUART HULT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2116-05L.                    Filed October 4, 2007.

Stuart Hult, pro se.

<u>Jamie J. Song</u>, for respondent.


MEMORANDUM OPINION

CARLUZZO, <u>Special Trial Judge</u>:  In a Notice of Determination
Concerning Collection Action(s) Under Section 6320 and/or 6330,[1]
dated January 5, 2005, respondent determined that the Notice of

_____

[1] Section references are to the Internal Revenue Code of
1986, as amended, in effect for the relevant period.  Rule
references are to the Tax Court Rules of Practice and Procedure.

Federal Tax Lien, filed on or about October 21, 2003, is an appropriate collection device with respect to petitioner's outstanding Federal income tax liabilities for the years 1996 through 1999, inclusive, which liabilities, including additions to tax and interest, at the time totaled more than $56,000 (petitioner's outstanding tax liabilities).

The issue for decision is whether respondent abused his discretion:[2] (1) By refusing to release or withdraw the above-referenced Notice of Federal Tax Lien, and/or (2) by rejecting petitioner's proposed collection alternative.

## Background

The absence of a stipulation of facts notwithstanding, see Rule 91, the relevant facts in this case are relatively straightforward and easily summarized.

Petitioner's outstanding tax liabilities arise from amounts reported on Federal income tax returns. As best as can be determined from the record, each return was filed late, and the unpaid tax liability shown on each return is attributable

---

[2] In his request for an administrative hearing, petitioner alleged that the "IRS assigns arbitrary amounts due without providing any basis for its outstanding amount determinations". Similarly, in the petition, petitioner alleges that "lien collection amounts are arbitrary". Because nothing was submitted supporting those allegations during either the administrative hearing or the trial, we do not consider petitioner to have challenged the existence or the amount of his outstanding tax liabilities. Consequently, we review respondent's collection action for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000).

either entirely or largely to the imposition of the alternative minimum tax. See sec. 55.

In an offer-in-compromise dated October 26, 2000 (the 2000 offer), petitioner proposed to satisfy his outstanding tax liabilities with an $8,256 cash offer, payable within 90 days from the date the offer was accepted by respondent. The 2000 offer, which was received by respondent on November 2, 2000, was based upon "doubt as to collectability". Along with the 2000 offer, petitioner submitted various financial information and documents in support of his claim that he had "insufficient assets and income to pay the full amount" of his outstanding tax liabilities.

The manner in which the 2000 offer was handled by respondent is not entirely clear--to say that it languished would be somewhat of an understatement. According to petitioner, the 2000 offer was transferred from one of respondent's offices to another, over and over again. In the meantime, petitioner suffered the horror of being present at the World Trade Center during the September 11, 2001, terrorist attack, apparently lost his job, and moved from New York to Vermont, where he resided when the petition was filed in this case.

In a letter dated June 16, 2003, petitioner was advised that the 2000 offer was assigned to Revenue Officer Joseph Barry (Mr. Barry). In the opening paragraph of the letter, Mr. Barry

apologized to petitioner "for the long delay in getting back" to him. The letter went on to note that Mr. Barry had "reviewed the [2000] offer file carefully" and concluded that "all of it is too dated to be of any use in evaluating" the 2000 offer. Mr. Barry noted that he needed "current information and documentation to accurately evaluate" the 2000 offer. In addition to numerous specific requests for additional information and documentation, Mr. Barry requested that petitioner provide "copies of all 2002 W-2s received by anyone in * * * [petitioner's] household". Although petitioner was married during all times relevant to this proceeding, his outstanding tax liabilities did not arise from joint returns.

Petitioner's presentation at trial makes it clear that at the time he received Mr. Barry's letter, he was less than pleased with the situation. Nevertheless, in a letter dated July 25, 2003, he responded to Mr. Barry's request for current financial information. For the most part he complied; however, in response to the request for information regarding his spouse, petitioner noted that his filing status for the years to which his outstanding tax liabilities and the 2000 offer relate was "married filing separately". Petitioner, in effect, objected to Mr. Barry's request for information relating to petitioner's wife.

From representations made in petitioner's July 25 letter, it appears that along with the letter, petitioner submitted a new offer-in-compromise (the 2003 offer).[3] According to the 2003 offer, petitioner proposed to satisfy his outstanding tax liabilities with a cash offer of $1,000 payable within 90 days from the date that respondent accepted it. As in the case of the 2000 offer, the 2003 offer was based upon "doubt as to collectability".

In a letter dated August 6, 2003, from Mr. Barry, petitioner was asked to supplement some of his responses, and once again, Mr. Barry requested information relating to the 2002 income of petitioner's wife. According to Mr. Barry, the income of petitioner's wife was "relevant to * * * petitioner's offer". Elsewhere in the letter, petitioner was advised that "for the IRS to accept an offer based upon doubt as to collectability, the amount offered must be at least equal to the taxpayer's net equity in assets". On the basis of an analysis of petitioner's financial status included in the letter, Mr. Barry concluded that petitioner's "current offer does not appear to meet that criterion". It cannot be determined whether references to petitioner's "offer" or "current offer" made in the August 6

---

[3] The exact date that the 2003 offer was submitted cannot be determined. It is referenced in petitioner's July 25, 2003, letter to Mr. Barry but dated July 27, 2003. Mr. Barry acknowledged receipt of the 2003 offer on Aug. 25, 2003.

letter relate to the 2000 offer or the 2003 offer.  Be that as it may, it is clear that from August 2003 the focus of the parties was on the 2003 offer.[4]

Mr. Barry's August 6 letter to petitioner also advised petitioner that Mr. Barry intended to file a Notice of Federal Tax Lien unless petitioner appealed his decision to do so in the manner explained in the letter.  Mr. Barry's decision to file a Notice of Federal Tax Lien was made, at least in part, in order to establish the priority of the Government's interest in real estate owned by petitioner.  See sec. 6323.

Petitioner's response to Mr. Barry's August 6 letter came in a letter dated September 12, 2003.  Petitioner provided some of the additional information but once again refused to provide information regarding his wife's 2002 income.[5]

---

[4] In a memorandum dated Sept. 25, 2003, Mr. Barry notes that the 2000 offer was "returned".  Otherwise the ultimate disposition of the 2000 offer remains as much a mystery as its status from July 2000 through June 2003.

[5] The dispute between Mr. Barry and petitioner on this point is somewhat puzzling inasmuch as the information sought was apparent from a copy of the 2002 joint Federal income tax return filed by petitioner and his wife.  The return shows adjusted gross income of $149,421.  It appears that the 2002 joint return was reviewed by Mr. Barry, and petitioner must have been aware that Mr. Barry had access to that return.

It should also be noted that, under the circumstances, Mr. Barry's request for petitioner's wife's income was consistent with sec. 301.7122-1(c)(2)(ii)(A), Proced. & Admin. Regs.

In a Form 9423, Collection Appeal Request, dated September 23, 2003, petitioner appealed Mr. Barry's decision to file a Notice of Federal Tax Lien. In that document petitioner argued that a Notice of Federal Tax Lien should not be filed because, among other reasons: (1) The 2003 offer was still pending; (2) filing the notice would add to the health problems he was suffering as a survivor of the terrorist attack on the World Trade Center; (3) he was cooperating fully with respondent in attempting to resolve his tax problems; (4) filing the notice would adversely affect his ability to obtain credit; and (5) filing the notice could adversely affect his ability to secure future employment.

Petitioner's appeal of Mr. Barry's decision to file a Notice of Tax Lien was handled by Appeals Officer Deborah L. Ross. After conferring with petitioner's representative, Ms. Ross, in a comprehensive memorandum dated October 20, 2003, that addresses each of the arguments advanced by petitioner, "sustained" Mr. Barry's decision to file a Notice of Federal Tax Lien with respect to petitioner's outstanding tax liabilities. The letter advising petitioner of Ms. Ross's decision, and the reasons for that decision, also notified petitioner that if he were to "successfully negotiate an acceptable offer-in-compromise, the lien would be released upon payment of the amount offered".

As noted above, on or about October 21, 2003, a Notice of Federal Tax Lien was filed with respect to petitioner's outstanding tax liabilities (the NFTL). By letter dated October 27, 2003, petitioner was advised of the event and notified of his right to request an administrative hearing to dispute it, which he did in a request dated November 27, 2003.

A short time earlier, by letter dated November 19, 2003, petitioner was advised that the 2003 offer had been rejected because: (1) It was "less than * * * [petitioner's] reasonable collection potential"; and (2) petitioner had "failed to provide the requested information and documentation" about his wife's income and expenses. That letter also advised petitioner that he could appeal the rejection of the 2003 offer, which he did by letter dated December 18, 2003.

Petitioner's request for an administrative hearing with respect to the NFTL and his appeal of the rejection of the 2003 offer were assigned to Settlement Officer Michael Blais (Mr. Blais). For reasons discussed in a memorandum dated December 15, 2004, Mr. Blais upheld the rejection of the 2003 offer.

During the administrative hearing conducted in connection with the NFTL, petitioner offered an installment agreement as an alternative collection action. Under the terms of the proposed installment agreement, petitioner offered to pay $100 per month

towards his outstanding tax liabilities.  Mr. Blais rejected the proposed installment agreement because it would not allow petitioner's outstanding tax liabilities to be paid within the applicable periods of limitation.  Having previously upheld the rejection of the 2003 offer, Mr. Blais further concluded that the NFTL was an appropriate collection action with respect to petitioner's outstanding tax liabilities, and he caused the above-referenced notice of determination that forms the basis for this case to be issued on January 5, 2005.

## Discussion

Petitioner availed himself of three separate, albeit more or less related, administrative appeals that preceded this proceeding.  He appealed Mr. Barry's (the revenue officer) decision to file the NFTL; he appealed Mr. Barry's rejection of the 2003 offer; and he challenged the filing of the NFTL in a section 6320(c) hearing.  Technically, only his challenge to the filing of the NFTL is reviewable in this proceeding.  After all, as noted in countless opinions, we are a Court of limited jurisdiction, and our jurisdiction in this proceeding is established exclusively, and limited, by section 6330(d).

Consequently, even though the appeal of the rejection of the 2003 offer and petitioner's request for a section 6320(c) hearing

were considered by the same settlement officer, Mr. Blais,[6] and even though the issues raised in those proceedings were inexorably intertwined so that, more likely than not, the determination that the NFTL was an appropriate collection action must have been, at least to some extent, influenced by the decision with respect to the rejection of the 2003 offer, we do not consider the appropriateness of that decision because the 2003 offer was not submitted during the course of the section 6320(c) administrative hearing. See sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.[7]

Instead, our focus is on respondent's rejection of the installment agreement offered by petitioner during the section 6320 administrative hearing, and respondent's refusal to withdraw or release the NFTL. According to petitioner: (1) The installment agreement should have been accepted in lieu of the NFTL; and (2) the NFTL should not have been filed while the 2003 offer was under consideration. Petitioner advances several other procedural grounds (some of which will be addressed below) in

---

[6] Sec. 6330(b)(3) provides, in relevant part: "The hearing under this subsection shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax * * * before the first hearing under * * * section 6320. A taxpayer may waive the requirement of this paragraph." Petitioner does not suggest that Mr. Blais should not have been assigned to both matters.

[7] Mr. Blais upheld the rejection of the 2003 offer under procedures established under sec. 7122(e).

support of his position that respondent's refusal to withdraw or release the NFTL is an abuse of discretion.[8]  According to respondent, neither the rejection of petitioner's proposed collection alternatives nor the other grounds raised by petitioner give rise to the relief that he seeks.  For the following reasons, we agree with respondent.

Petitioner's claim that it was improper to file the NFTL while the 2003 offer was under consideration is easily rejected. Unlike section 6331(k)(1), which precludes a levy while an offer-in-compromise is under consideration, there is no such restriction in section 6321, which provides:  "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

---

[8] Petitioner also argues that the NFTL is invalid because: (1) He did not receive notice as required under sec. 6320(a)(2) - a moot point as a timely sec. 6320(c) hearing was requested, Call v. Commissioner, T.C. Memo. 2005-289, affd. 230 Fed. Appx. 758 (9th Cir. 2007); and (2) the NFTL was not signed, which is not necessary.  See Milam v. Commissioner, T.C. Memo. 2004-94.

Petitioner also complains about the manner in which he was treated by various Internal Revenue Service employees in connection with the collection of his outstanding tax liabilities.  We need not address those complaints, however, because even if legitimate, none would have any impact on his entitlement to the relief he seeks in this proceeding.

Among other complaints raised by petitioner that will not be addressed here are:  (1) Respondent took an unreasonably long time to consider the 2000/2003 offer; and (2) Mr. Barry is incompetent.

In addition to the lien that arises under section 6321, sometimes referred to as a "secret lien", a notice of Federal tax lien filed in accordance with section 6323 operates to protect the Government's interest in a taxpayer's property against the claims of other creditors of the taxpayer. Consistent with the purpose of section 6323, in this case, the NFTL was filed in order to protect the Government's interest in certain real estate owned by petitioner and his spouse. It was not improper for respondent to file the NFTL while the 2003 offer was under consideration, and respondent's refusal to withdraw or release the lien on that ground is not an abuse of discretion.

Section 6159 allows the Commissioner "to enter into written agreements with any taxpayer under which such taxpayer is allowed to make payment on any tax in installment payments", if the Commissioner "determines that such agreement will facilitate full or partial collection of such liability." We begin our consideration of petitioner's claim that respondent should have accepted his proposed installment agreement in lieu of the NFTL by noting that an installment agreement is not necessarily an alternative to a notice of Federal tax lien. In those situations where the taxpayer and the Commissioner have entered into an installment agreement, a notice of Federal tax lien may still be filed. See Crisan v. Commissioner, T.C. Memo. 2007-67; sec. 301.6159-1(d)(3), Proced. & Admin. Regs.

As it stands, to be entitled to the relief he seeks in this case, petitioner must establish that, in and of itself, respondent's refusal to agree to the installment agreement that he proposed during the administrative hearing was an abuse of discretion. This he has failed to do.

Accepting or rejecting an installment agreement proposed by a taxpayer is within the discretion of the Commissioner. See sec. 301.6159-1(b)(1)(i), Proced. & Admin. Regs. Discretionary decisions made in response to an installment agreement proposed by a taxpayer will not be upset unless it is demonstrated that the decision was arbitrary in one way or another and could not be supported in law and in fact. See Freije v. Commissioner, 125 T.C. 14 (2005); Schulman v. Commissioner, T.C. Memo. 2002-129. In this case, the settlement officer took into account petitioner's outstanding tax liabilities and reviewed what financial information petitioner submitted.

Based upon his review, the settlement officer noted that the installment agreement proposed by petitioner would not be sufficient to pay off petitioner's outstanding tax liabilities within the applicable periods of limitation. After reviewing petitioner's financial situation, the settlement officer also concluded that the installment agreement proposed by petitioner did not accurately represent petitioner's ability to pay. We do not substitute our judgment for the settlement officer's on

such matters.  See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006).  Whether we agree or disagree on the point is unimportant.  It can hardly be said the settlement officer's conclusion was in any way arbitrary, capricious, or without sound basis in fact.  Respondent's refusal to accept the installment agreement proposed by petitioner during the section 6320 administrative hearing was not an abuse of discretion.

At the section 6320(c) administrative hearing, petitioner challenged the appropriateness of respondent's proposed collection activity and offered a collection alternative.  See sec. 6330(c)(2)(A)(ii) and (iii).  The record establishes that the settlement officer took into account petitioner's challenge, considered petitioner's collection alternative, and otherwise proceeded in the manner contemplated by sections 6320 and 6330.  Petitioner has not called our attention to any specific provisions of the relevant statutes, regulations, or provisions of the Internal Revenue Manual that the settlement officer has violated or failed to take into account.

Considering all of the facts and circumstances, we are satisfied that respondent's determination that the NFTL is an appropriate collection action with respect to petitioner's outstanding tax liabilities is supported in law and in fact.  It follows that the determination is not an abuse of discretion, see

<u>Freije v. Commissioner</u>, <u>supra</u>, and respondent may proceed with collection as proposed in the above-referenced notice of determination.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.