T.C. Summary Opinion 2005-151


UNITED STATES TAX COURT


SIMON L. AND PATRICIA M. RICHARD, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1216-03S.              Filed October 13, 2005.


Simon L. and Patricia M. Richard, pro sese.

Scott T. Welch, for respondent.


GALE, Judge:  This case was heard pursuant to the provisions of section 7463[1] providing for small tax case proceedings.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1] Unless otherwise noted, section references are to the Internal Revenue Code of 1986, as amended.

Petitioners filed a timely petition for review under section 6330(d)(1)(A) of respondent's determination to proceed with collection of their 1993 and 1997 Federal income tax liabilities by means of a lien.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioners were married and resided in Baton Rouge, Louisiana, when they filed their petition.

Petitioners timely filed a joint Federal income tax return for 1991. On April 13, 1992, respondent assessed the $8,943 tax reported as due, and, as petitioners had withholding and excess FICA credits totaling $10,090.60, an overpayment of $1,147.60 resulted. The overpayment was initially applied to tax liabilities for 1986 and 1987, but a substantial portion of this application was subsequently reversed, and most of the overpayment for 1991, plus interest, was refunded to petitioners on July 19, 1993.

The Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for petitioners' 1991 taxable year records that the period of limitations on assessment was extended to September 12, 1995, on July 17, 1995. According to the Form

4340, respondent made a "quick assessment"[2] on August 28, 1995, of $4,941 in tax and an interest assessment of $1,096.13 with respect to petitioners' 1991 taxable year (1991 quick assessment).[3]

Petitioners did not timely file a joint return for 1992. Respondent prepared a substitute for return and on September 25, 1995, assessed income tax of $11,913, interest of $2,363.09, and a late filing addition to tax of $2,183.

Petitioners did not timely file a joint return for 1993. Respondent prepared a substitute for return and on March 4, 1996, assessed income tax of $7,652, additions to tax for late filing and failure to pay estimated tax, and interest. The parties have stipulated that respondent issued a notice of deficiency for 1993; petitioners thereafter submitted a 1993 joint Federal income tax return on April 17, 1996, which respondent treated as an amended return. The amended return reported income, withholding credits, and tax due in larger amounts than had been initially assessed. Respondent therefore on August 12, 1996,

---

[2] A "quick assessment" is an internal administrative term the Commissioner uses to denote assessments made in delineated circumstances, including where the period of limitations on assessment will expire within 60 days. See generally Dallin v. United States 62 Fed. Cl. 589, 599, 601-602 (2004); Koss v. United States, 81 AFTR 2d 98-2049, 98-1 USTC par. 50,428 (E.D. Pa. 1998); 1 Audit, Internal Revenue Manual (CCH), sec. 4.4.25 at 8477.

[3] The Form 4340 for 1991 further records assessments in 1998 and 1999 totaling $1,217.36.

made an additional tax assessment of $6,500 (bringing the total assessment to the $14,152 petitioners reported as due on the amended return) and allowed an additional withholding credit to conform those credits to the amount petitioners reported. Petitioners did not pay the entire tax reported as due on the amended return, and there was an outstanding liability for 1993 after respondent made the assessments just described.[4]

In 1998, petitioners entered into an installment agreement with respondent to satisfy their 1993 tax liability (1993 installment agreement). Petitioners made periodic payments totaling $2,617 pursuant to the 1993 installment agreement from July 1998 to April 1999. However, respondent applied $2,219.76 of these payments to the 1991 quick assessment and the $397.24 balance to a 1992 assessment.

Petitioners received an extension to June 15, 1995, for filing their return for 1994 and on June 20, 1995, filed a joint Federal income tax return for 1994 reporting a tax due of $4,114. After withholding credits of $3,923, petitioners had a balance due of $191. They submitted a payment of $195.84 on August 21, 1995, which satisfied all outstanding assessments for 1994.

---

[4] Respondent also abated the addition to tax for failure to pay estimated tax and partially abated the late filing addition to tax and interest to bring the assessments into conformity with the amounts petitioners reported on the amended return.

Petitioners timely filed a joint Federal income tax return for 1995 reporting a tax due of $1,586. Because petitioners had a withholding credit of $3,435, an overpayment of $1,849 resulted, which respondent applied to the 1991 quick assessment.

On October 28, 1996, respondent collected and applied a levy of $387.49 to the 1991 quick assessment.

Petitioners timely filed a joint Federal income tax return for 1996 reporting tax due of $418. Because petitioners had withholding and earned income credits totaling $2,247.58, an overpayment of $1,829.58 resulted, which respondent applied to the 1991 quick assessment.

On January 21, 1997, respondent collected and applied a levy of $120.43 to the 1991 quick assessment.

Petitioners timely filed a joint Federal income tax return for 1997 reporting tax due of $6,887. As petitioners' withholding and excess FICA credits totaled only $2,696.69, respondent assessed the reported tax as well as a failure to pay addition to tax of $31.57 and interest of $43.38. On July 13, 1998, respondent abated $1,033 of the previously assessed tax.

On September 8, 2000, respondent sent petitioners a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under I.R.C. 6320, indicating income tax owed of $3,337.24 and $3,232.26 for the 1993 and 1997 taxable years, respectively. Petitioners subsequently submitted a Form 12153,

Request for a Collection Due Process Hearing, requesting a hearing for taxable years 1991, 1992, 1993, 1994, and 1997, that respondent deemed timely.  On December 5, 2001, a hearing with an Appeals officer of respondent was conducted by telephone. Petitioner Simon Richard brought to the Appeals officer's attention his claim that the payments he made pursuant to the 1993 installment agreement had been improperly applied to a purported liability for 1991.  Mr. Richard further advised the Appeals officer of his contention that the 1991 liability, to which the 1993 installment agreement payments were applied, had been assessed beyond the 3-year period of limitations on assessment.  In her subsequent determination, the Appeals officer concluded that the Appeals Office lacked jurisdiction over petitioners' 1991 taxable year and that petitioners' foregoing contentions could therefore not be considered as part of the hearing.

On October 23, 2002, a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 was mailed to petitioners in which the Appeals officer determined that all requirements of any applicable law or administrative procedure had been met and that the lien was appropriate to collect

outstanding liabilities for 1993 and 1997. Petitioners timely filed a petition seeking review of the determination.[5]

## Discussion

Section 6321 imposes a lien in favor of the United States on all property and rights to property of any person who fails to pay a tax after demand. Such a lien arises when an assessment is made and generally becomes effective against third parties upon the filing of notice thereof by the Secretary. Secs. 6322 and 6323. Section 6320 provides that the Secretary shall furnish the person described in section 6321 (taxpayer) with written notice of the filing of a lien under section 6323 not more than 5 business days after the day of filing the notice. Section 6320 further provides that the taxpayer may request administrative review of the matter (in the form of an Appeals Office hearing) within 30 days beginning on the day after the 5-day period. Sec. 6320(a)(3)(B), (b)(1). Section 6320(c) provides that the Appeals Office hearing shall be conducted consistent with the procedures set forth in subsections (c), (d), and (e) of section 6330.

Section 6330(c)(1) provides that the Appeals officer shall verify that the requirements of any applicable law or

---

[5] The petition sought review of taxable years 1991, 1992, 1993, and 1997 (but not 1994). On July 2, 2003, we granted respondent's motion to dismiss for lack of jurisdiction with respect to taxable years 1991 and 1992, as no notice of determination to proceed with a collection action had been issued with respect to those periods.

administrative procedure have been met.  Section 6330(c)(2)(A) provides that the taxpayer may raise "any relevant issue related to the unpaid tax" including spousal defenses, challenges to the appropriateness of collection actions, and alternatives to collection.  The taxpayer may also raise challenges to the existence or amount of the underlying tax liability if he did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability.  Sec. 6330(c)(2)(B).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection and shall take into account (I) the verification that the requirements of any applicable law or administrative procedure have been met, (ii) the relevant issues raised by the taxpayer, (iii) challenges to the underlying tax liability by the taxpayer, where permitted, and (iv) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

We have jurisdiction to review the Appeals officer's determination where we have jurisdiction over the type of tax involved in the case.  Sec. 6330(d)(1)(A); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004).  Generally, we may consider only those issues that the taxpayer raised during the

section 6330 hearing.  See sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.; see also Magana v. Commissioner, 118 T.C. 488, 493 (2002).  Where the underlying tax liability is properly at issue, we review the determination de novo.  E.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the underlying tax liability is not at issue, we review the determination for abuse of discretion.  Id. at 182.  Whether an abuse of discretion has occurred depends upon whether the exercise of discretion is without sound basis in fact or law.  See Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 371 (1995).

Petitioners do not appear to dispute the underlying tax liabilities for 1993 and 1997 as originally assessed by respondent.  In any event, the assessments for those years match the amounts petitioners reported as due on their returns, and petitioners have offered no basis for a conclusion that the assessments are in error.  See Montgomery v. Commissioner, 122 T.C. 1 (2004).  Instead, petitioners contend that the taxes due for 1993 and 1997 have been paid.[6]

More specifically, petitioners contend that the $3,337.24 liability that respondent asserts exists for 1993 has been paid because $2,617 in payments they made pursuant to the 1993

---

[6] Petitioners' claim that the 1993 and 1997 taxes have been paid is the only relevant issue that they raised at the hearing or herein; they have not raised any spousal defenses or offered any collection alternatives.  See sec. 6330(c)(2)(A).

installment agreement were instead applied by respondent to a 1991 liability which was itself invalidly assessed after expiration of the period of limitations on assessment for 1991. Moreover, petitioners contend, overpayment credits from their 1995 and 1996 taxable years of $1,849 and $1,829.58, respectively, as well as levies in 1996 and 1997, were likewise applied by respondent against the invalidly assessed liability for 1991, and those credits and levies should have been available to satisfy the 1993 liability that respondent now asserts.

Our review of the record in this case, including the Forms 4340 covering petitioners' 1991 through 1997 taxable years, persuades us that petitioners are correct in asserting that respondent improperly applied their 1993 installment agreement payments against a 1991 liability (and, to a small extent, a 1992 liability). The parties have stipulated that petitioners had an installment agreement to pay their 1993 income tax liability and that petitioners made some payments thereunder (although neither party produced a copy of the agreement). The Form 4340 for 1993 does not record any payments' having been credited against that year's liability, however. Mr. Richard's uncontradicted testimony was that the 1993 installment agreement was entered into in 1998. The Form 4340 for 1991 records a payment credited against that year's liability of $337 on July 19, 1998, followed

by the crediting of 6 payments of $380 each at roughly monthly intervals from August 21, 1998, through April 11, 1999.[7]

Respondent argues on brief that petitioners have not "shown that any payments designated for 1993 * * * were applied to another year".[8] We disagree. We are persuaded on the basis of the foregoing evidence that petitioners made payments pursuant to the 1993 installment agreement that respondent credited against their 1991 and 1992 liabilities. The payments that respondent has stipulated petitioners made under the 1993 installment agreement are otherwise unaccounted for in the Forms 4340 in the record covering petitioners' taxable years 1991 through 2000.

To the extent respondent may be suggesting that the payments made pursuant to the 1993 installment agreement were undesignated, or that respondent was otherwise free to apply them to petitioners' 1991 or 1992 liabilities, we also disagree. Installment agreements are devices for the collection of the liability to which they relate. Section 6159(a) authorizes the

---

[7] A portion ($17.24) of the penultimate payment (Mar. 8, 1999) and all ($380) of the last payment (Apr. 11, 1999) were treated by respondent as overpayments for 1991 and were transferred to and credited against petitioners' 1992 liability.

[8] Respondent also argues that petitioners may not contest the application of the 1993 installment agreement payments to 1991 because the issue was not raised in their petition or pre-trial memorandum. However, the notice of determination indicates that petitioners raised this issue at the Appeals hearing. Issues raised at the Appeals hearing or otherwise brought to the attention of the Appeals Office are within our jurisdiction for review. Magana v. Commissioner, 118 T.C. 488, 493 (2002).

Secretary to enter into installment agreements with any taxpayer "to satisfy liability for payment of any tax in installment payments if the Secretary determines that such agreement will facilitate collection <u>of such liability</u>." (Emphasis added.) Similarly, the regulations under section 6159 authorize designated personnel of the Commissioner to enter into an installment agreement with a taxpayer "that allows the taxpayer to satisfy <u>a</u> tax liability by making scheduled periodic payments until <u>the</u> liability is fully paid". Sec. 301.6159-1(a), Proced. & Admin. Regs. (emphasis added). Installment agreements generally entail a finite term during which the subject liability is paid in full, coupled with an agreement by the taxpayer to an extension of the period of limitations on collection of that liability. See sec. 301.6159-1(b)(1)(i)(A), (2), Proced. & Admin. Regs. The notion that the Commissioner may apply an installment payment to satisfy a liability other than that for the period covered by the installment agreement contravenes the statute and regulations governing such agreements.[9] Respondent's application of petitioners' payments under the 1993 installment agreement to their 1991 and 1992, rather than 1993, liabilities

---

[9] Although the Internal Revenue Manual states that all outstanding liabilities of a taxpayer should be included in an installment agreement, there is no evidence or suggestion in this case that the 1993 installment agreement covered liabilities in other years. To the contrary, the parties have stipulated that the 1993 installment agreement was an agreement "to pay the 1993 income tax liabilities".

was therefore improper, and the Appeals officer's disregard of their claim that those payments had been misapplied was an abuse of discretion.  In so doing, the Appeals officer failed to satisfy the mandate of section 6330(c)(1) that she verify that the requirements of any applicable law or administrative procedure had been met.  The $3,337.24 liability for 1993 that respondent seeks to collect herein must be offset by the $2,617 in payments petitioners made under the 1993 installment agreement that respondent improperly applied to their 1991 and 1992 liabilities.

Petitioners also contend that respondent improperly applied their 1995 and 1996 overpayments to 1991 because the 1991 assessment to which they were applied (i.e., the 1991 quick assessment) was invalid, having been made after the period of limitation on assessment for petitioners' 1991 taxable year had expired.  As a consequence, petitioners contend, those overpayments should be available to satisfy the 1993 and 1997 liabilities sought to be collected herein.

Respondent counters that this Court lacks jurisdiction to consider whether the 1991 quick assessment was valid, because 1991 was not a subject of the notice of determination; that is, 1991 is a nondetermination year in this case.[10]  We held to the

[10] Respondent notes in this regard that we granted his motion to dismiss for lack of jurisdiction with respect to
(continued...)

contrary in Freije v. Commissioner, 125 T.C. 14 (2005). "[O]ur jurisdiction under section 6330(d)(1)(A) encompasses consideration of facts and issues in nondetermination years where the facts and issues are relevant in evaluating a claim that an unpaid tax has been paid." Id. at 27. Under Freije, petitioners' claim that their 1995 and 1996 overpayments should be available to offset the unpaid liabilities for 1993 and 1997 because the overpayments were applied against an invalid 1991 assessment is a "relevant issue relating to the unpaid tax" within the meaning of section 6330(c)(2), over which we have jurisdiction pursuant to section 6330(d)(1).

Respondent further argues that, in the event we conclude that we have jurisdiction, the 1991 quick assessment was valid, notwithstanding that it was made on August 28, 1995, more than 3 years after April 15, 1992,[11] because petitioners consented to an extension of the period of limitations on assessment for 1991

---

[10](...continued)
petitioners' 1991 taxable year. However, we granted dismissal for lack of jurisdiction concerning 1991 because there was no determination concerning a collection action for that year. Whether any fact or issue arising in 1991 is a "relevant issue", within the meaning of sec. 6330(c)(2), with respect to an unpaid tax in 1993 or 1997, is a separate question. See Freije v. Commissioner, 125 T.C. 14 (2005).

[11] Petitioners' Form 4340 for 1991 records that their 1991 Federal income tax return was filed, and the tax reported thereon assessed, on Apr. 13, 1992. Accordingly, the period of limitation on assessment for petitioners' 1991 income taxes expired on Apr. 15, 1995, absent an extension. See sec. 6501(a) and (b)(1).

until September 12, 1995.  Petitioners deny that they agreed to any extension of the period of limitations.

Petitioners' Form 4340 for 1991 records that their 1991 return was filed, and the tax reported as due thereon assessed, on April 13, 1992.  According to the Form 4340, petitioners' withholding and excess FICA credits exceeded the assessed tax, resulting in an overpayment that was initially transferred to petitioners' 1987 account,[12] but the transfer was subsequently reversed and a $1,107.34 refund of the overpayment (plus interest) was made to petitioners on July 19, 1993.

The Form 4340 thereafter contains the following entry, dated July 17, 1995:  "ASSESSMENT STATUTE EXPIR DATE EXTEND TO 09-12-1995".  The Form 4340 further records that a quick assessment of $4,941, plus interest of $1,096.13, was assessed on August 28, 1995.  According to the Form 4340, petitioners' 1995 and 1996 overpayments were applied against the quick assessment on April 15, 1996 and 1997, respectively.

Neither party was able to offer any explanation concerning the circumstances giving rise to the quick assessment. Respondent relies exclusively on the 1991 Form 4340 in contending that petitioners had an unsatisfied liability for that year. Respondent likewise relies exclusively upon the 1991 Form 4340 to

---

[12] Less than $50 of the overpayment was also transferred to petitioners' 1986 account.

support his contention that petitioners extended the period of limitations on assessment for 1991 beyond April 15, 1995. Absent a showing of irregularity in the assessment procedure, a Form 4340 is presumptive evidence that a tax has been validly assessed. Roberts v. Commissioner, 329 F.3d 1224, 1228 (11th Cir. 2003), affg. 118 T.C. 365 (2002); Davis v. Commissioner, 115 T.C. 35, 40-41 (2000). The difficulty with respondent's position is that the Form 4340 on which he relies has an irregularity; on its face, it records a purported extension of the period of limitations some 3 months after its expiration, in apparent violation of section 6501(c)(4). That section provides that the period of limitation on assessment may be extended by agreement where the Secretary and the taxpayer have consented in writing to an extension "before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title". Sec. 6501(c)(4). An extension signed after the expiration of the period of limitations is without effect. Diamond Gardner Corp. v. Commissioner, 38 T.C. 875, 881 n.6 (1962); Parsons v. Commissioner, T.C. Memo. 1984-333, n.2. Accordingly, the Form 4340, rather than confirming the validity of the quick assessment, supports the conclusion that the quick assessment was invalid because untimely. The Form 4340 establishes a prima facie case for petitioners that the assessment was made on August 28, 1995, after expiration of the

period of limitations on assessment, and the document tends to disprove respondent's contention that the period of limitations was lawfully extended beyond April 15, 1995. We therefore conclude on this record that the period of limitations on assessment for 1991 expired before the quick assessment was made.[13] The 1991 liability was therefore extinguished on April 15, 1995, before petitioners' 1995 and 1996 overpayments were applied to it. See Hoffman v. Commissioner, 119 T.C. 140, 150 (2002); Diamond Gardner Corp. v. Commissioner, supra at 879-881. The same is true regarding associated interest or penalties. See Hoffman v. Commissioner, supra.

As a consequence, petitioners' 1995 and 1996 overpayments are available to satisfy liabilities in years other than 1991. Petitioners filed timely returns for 1995 and 1996 (which respondent accepted as his basis for concluding there were overpayments in those years). Petitioners' returns constituted timely claims for refund of those overpayments. See sec. 301.6402-3(a)(5), Proced. & Admin. Regs. Respondent's purported application of the overpayments to the extinguished 1991

---

[13] The Form 4340 for 1991 in addition records assessments in 1998 and 1999, after the purported extension of the period of limitations to Sept. 12, 1995. There is no entry on the Form 4340 suggesting any additional extension of the limitations period beyond the purported Sept. 12, 1995, extension. Any such subsequent extension would in any event also be invalid. Respondent has not addressed these assessments, totaling $1,217.36, but they are likewise invalid because untimely.

liability merely preserved their character as overpayments.  See sec. 6401(a); Ill. Masonic Home v. Commissioner, 93 T.C. 145, 150 (1989); Diamond Gardner Corp. v. Commissioner, supra at 881 ("any payment by a taxpayer of a [time-]barred tax liability, whether voluntary or involuntary, automatically becomes an 'overpayment'").

Finally, petitioners contend, and the 1991 Form 4340 confirms, that respondent made levies of $387.49 and $120.43 against petitioners in 1996 and 1997 that were applied against the 1991 quick assessment liability after its April 15, 1995, extinguishment.  As a consequence, the payments made pursuant to these levies became overpayments.  See sec. 6401(a); Diamond Gardner Corp. v. Commissioner, supra.

Petitioners made payments of $2,617 under the 1993 installment agreement that respondent should have applied to their 1993 liability.[14]  Petitioners' overpayments of $1,849 and $1,829.58 for 1995 and 1996, respectively, are also available to offset, as of April 15, 1996, and April 15, 1997, respectively, all or a portion of the 1993 and 1997 liabilities that respondent has sought to collect.  The levies of $387.49 and $120.43 in 1996

_____

[14] Alternatively, even if respondent were permitted to apply petitioners' payments under the 1993 installment agreement to liabilities arising in other years, respondent's application of the 1993 installment agreement payments to the extinguished 1991 liability would have converted those payments to overpayments, pursuant to sec. 6401(a), making them available to satisfy the 1993 and 1997 liabilities sought to be collected herein.

and 1997, respectively, are overpayments that are similarly available as of the date paid.  We conclude that the Appeals officer abused her discretion in failing to take the foregoing payments and credits into account when determining that the liens at issue should not be withdrawn.  Because the interest computations attendant to the application of the foregoing payments and credits cannot be made on this record, we shall remand this case to respondent's Appeals Office for further consideration.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.