*PRELIMINARY PRINT*

VOLUME 605 U. S. PART 2
PAGES 422–442

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 12, 2025

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

COMMISSIONER OF INTERNAL REVENUE *v.* ZUCH

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE THIRD CIRCUIT

No. 24–416.  Argued April 22, 2025—Decided June 12, 2025

This case involves the jurisdiction of the United States Tax Court over
appeals from collection due process hearings when there is no longer an
ongoing levy.   The dispute here began in 2012, when Jennifer Zuch and
her then-husband Patrick Gennardo each filed an untimely 2010 federal
tax return.   Gennardo subsequently submitted an offer in compromise
to resolve outstanding tax liabilities.   This offer implicated $50,000 in
estimated tax payments that the couple had previously sent to the IRS;
following the offer, the IRS applied these payments to Gennardo's ac-
count.   For her part, Zuch later amended her 2010 tax return to report
additional income, which resulted in an additional $28,000 in taxes due.
But Zuch maintained that the IRS should have credited the couple's
$50,000 payment to her account, entitling her to a $22,000 refund.   The
IRS disagreed and sought to collect her unpaid taxes by placing a levy
on her property pursuant to its authority under 26 U. S. C. § 6331(a).
Zuch requested a collection due process hearing to contest the levy.
The appeals officer rejected Zuch's argument about the misapplied
$50,000 tax payment and issued a Notice of Determination sustaining
the levy action under § 6330(c)(3).   Zuch then appealed to the Tax Court
under  § 6330(d)(1).  During the multi-year proceedings before the
agency and the Tax Court that followed, Zuch filed several annual tax
returns showing overpayments.   Each time, the IRS applied these
overpayments to her outstanding 2010 tax liability rather than issuing
refunds.   Once Zuch's liability reached zero, the IRS moved to dismiss
the Tax Court proceeding as moot, arguing that the Tax Court lacked
jurisdiction because the IRS no longer had a basis to levy on Zuch's
property.   The Tax Court agreed.   But on appeal, the Third Circuit
vacated the dismissal, holding that the IRS's abandonment of the levy
did not moot the Tax Court proceedings.

*Held*: The Tax Court lacks jurisdiction under § 6330 to resolve disputes
between a taxpayer and the IRS when the IRS is no longer pursuing a
levy.   Pp. 428–432.
   (a)  "The Tax Court is a court of limited jurisdiction."   *Commissioner*
v. *McCoy*, 484 U. S. 3, 7 (*per curiam*).   Section 6330(d)(1) grants the Tax
Court jurisdiction to "review" an appeals officer's "determination" in a
collection due process hearing.   The scope of the "determination" deter-

mines what the Tax Court has jurisdiction to review. The Court agrees with the Government that "determination" refers to the binary decision whether a levy may proceed. Section 6330(c)(3) requires the appeals officer to consider three things when making this "determination," including "issues raised" by the taxpayer. The statute thus distinguishes between "consideration[s]" that inform the "determination" and the "determination" itself. Here, Zuch's dispute about estimated tax payments was an input into the "determination"—an "issu[e] raised" that the appeals officer was required to consider under § 6330(c)(3)(B). The "determination," by contrast, was just the appeals officer's decision to sustain the levy.

Statutory context also supports the Government's position on the limited scope of the Tax Court's jurisdiction under § 6330(d)(1). When a taxpayer wants to contest tax liability, the default rule requires taxpayers to first pay the disputed tax before pursuing a challenge. § 7421(a). Had the IRS simply offset Zuch's overpayments without pursuing a levy, her only recourse would have been a refund suit in line with the default rule. The IRS's proposed levy triggered Zuch's right to a collection due process hearing under § 6330(a)(1), but § 6330—titled "Notice and opportunity for hearing before levy"—focuses just on the proposed levy. The hearing's scope tracks its purpose: taxpayers may raise only levy-related issues. See § 6330(c)(2)(A) ("any relevant issue relating to the unpaid tax or the proposed levy"); § 6330(c)(2)(B) ("challenges to the existence or amount of the *underlying* tax liability" (emphasis added)). Given § 6330's unwavering focus on levies and the default rule requiring postpayment suits, it would be strange if a taxpayer could use a § 6330 appeal to resolve tax disputes that no longer have any connection to an ongoing levy.

Finally, the Court doubts the Tax Court has authority under § 6330(e) to provide relief beyond enjoining a levy. Nothing in § 6330(e)(1) authorizes the Tax Court to order refunds or to issue declaratory judgments resolving tax liability disputes. While Zuch argues that authority to enjoin a levy necessarily includes the ability to declare the validity of underlying tax obligations, the Tax Court's authority to render such conclusions depends on the levy's existence. Pp. 428–431.

(b) The Tax Court properly dismissed Zuch's appeal. The appeals officer issued a "determination" that the IRS's proposed levy could proceed. The Tax Court had jurisdiction to review that determination—to decide whether the levy could (or could not) go forward. As part of that review, the Tax Court initially had authority to determine whether the appeals officer's predicate conclusions—like whether the $50,000 should have been credited exclusively to Gennardo—were correct. But once Zuch no longer owed unpaid taxes, there was no basis for a levy

and thus no relevant "determination" to review. The Tax Court lacked jurisdiction to opine on disputed tax liability independent of any ongoing collection effort. Zuch's recourse for alleged tax overpayments is to file a refund suit, see 28 U. S. C. §§ 1346(a)(1), 1491(a)(1), which she has already done. Pp. 431–432.

97 F. 4th 81, reversed and remanded.

BARRETT, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, SOTOMAYOR, KAGAN, KAVANAUGH, and JACKSON, JJ., joined. GORSUCH, J., filed a dissenting opinion, *post*, p. 432.

*Erica L. Ross* argued the cause for petitioner. With her on the briefs were *Solicitor General Sauer*, *Acting Solicitor General Harris*, *Deputy Assistant Attorney General Hubbert*, *Deputy Solicitor General Gannon*, *Francesca Ugolini*, *Jennifer M. Rubin*, and *Julie Ciamporcero Avetta*.

*Shay Dvoretzky* argued the cause for respondent. With him on the brief were *Parker Rider-Longmaid*, *Armando Gomez*, *Sylvia O. Tsakos*, *Hanaa Khan*, *Raza Rasheed*, and *Frank Agostino.**

JUSTICE BARRETT delivered the opinion of the Court.

The Tax Code authorizes the Internal Revenue Service to levy on—in other words, to seize and sell—a taxpayer's property to collect unpaid taxes. 26 U. S. C. § 6331(a). Before a levy goes forward, however, the taxpayer has the right to a hearing at which she can dispute issues relating to the levy. §§ 6330(a)–(b). At the hearing, an appeals officer considers the taxpayer's arguments and renders a "determination" about whether the levy can proceed. § 6330(c)(3). If the appeals officer sustains the levy, the taxpayer can seek review in the United States Tax Court. § 6330(d)(1).

—————

*Briefs of *amici curiae* urging affirmance were filed for the Center for Taxpayer Rights by *Audrey Patten*; for the Chamber of Commerce of the United States of America by *Lauren Willard Zehmer*; for the National Taxpayers Union Foundation et al. by *Joseph D. Henchman*; and for A. Lavar Taylor, *pro se.*

This case presents a procedural twist. While Jennifer Zuch's appeal was pending before the Tax Court, she overpaid her taxes—and the IRS applied those overpayments against her alleged tax liability, thereby eliminating any justification for a levy. Yet Zuch wanted the appeal to continue. She still disputed the debt that prompted the levy, and she hoped that a victory before the Tax Court would force the IRS to refund her overpayments. We must decide whether the Tax Court had jurisdiction to hear Zuch's appeal once the possibility of a levy was off the table. It did not.

I

A

The typical way to dispute a tax liability is to pay first and then seek a refund. 26 U. S. C. §7421(a) (barring most "suit[s] for the purpose of restraining the assessment or collection of any tax"); see also 28 U. S. C. §2201(a) (barring declaratory judgments in actions "with respect to Federal taxes"). In certain circumstances, however, Congress has given taxpayers the option of prepayment judicial review. A levy is one such exception. When a taxpayer who is "liable to pay [a] tax neglects or refuses to pay the same," the IRS may "levy upon all property and rights to property" belonging to the taxpayer. 26 U. S. C. §6331(a). But because the seizure and sale of property has serious consequences for the taxpayer, see §6331(b), Congress requires the IRS to give the taxpayer an opportunity to request a hearing before the levy is made, §§6330(a)–(b), (e)(1). In the tax world, this is called a "collection due process hearing."

An appeals officer in the IRS Independent Office of Appeals conducts the collection due process hearing. §6330(b)(3). At it, the taxpayer "may raise . . . any relevant issue relating to the unpaid tax or the proposed levy," such as "appropriate spousal defenses," "challenges to the appropriateness of collection actions," or "offers of collection alternatives." §6330(c)(2)(A). The taxpayer "may also raise at

the hearing challenges to the existence or amount of the underlying tax liability" if the taxpayer did not previously have an opportunity to dispute the tax liability. § 6330(c)(2)(B). The appeals officer then makes a "determination," which "shall take into consideration" various factors, including "the issues raised" by the taxpayer. § 6330(c)(3).

Within 30 days of the appeals officer's determination, the taxpayer may "petition the Tax Court for review of such determination." § 6330(d)(1). The decision of the Tax Court is reviewable in the federal courts of appeals. § 7482(a).

B

In the fall of 2012, Jennifer Zuch and her then-husband Patrick Gennardo separately filed untimely 2010 federal income tax returns. Zuch's return reported no outstanding tax obligations, but Gennardo's reflected a substantial balance due. To resolve this balance, as well as other outstanding tax liabilities, Gennardo submitted an offer in compromise to the IRS. See § 7122(a). This offer implicated estimated tax payments—totaling $50,000—that the couple had already sent to the IRS. After Gennardo submitted his offer, the IRS applied these payments to his account as a married-filing-separate taxpayer, thereby settling his debt.

A few weeks later, Zuch filed an amended 2010 tax return that reported an additional $71,000 in income from a retirement distribution, generating almost $28,000 in tax liability. But Zuch also claimed that the $50,000 in estimated tax payments should be credited to her account, entitling her to a net refund of about $22,000.

The IRS disagreed. Because it had already allocated the $50,000 to Gennardo, it refused to apply the estimated payments to Zuch. Instead, the IRS informed her that it intended to levy on her property to collect what it deemed to be unpaid taxes. Zuch requested a collection due process hearing, at which she asserted that the IRS should have credited the estimated tax payments to her account. The

appeals officer rejected her argument and sent Zuch a Notice of Determination sustaining the levy action. Zuch then appealed to the Tax Court, which remanded the case back to the Office of Appeals for further factual development. The Office sustained the levy, and proceedings resumed in the Tax Court.

The process spanned several years, and on multiple occasions during this period, Zuch filed an income tax return reporting an overpayment that entitled her to a refund. But each time, instead of issuing a refund, the IRS credited the overpayment against Zuch's supposedly outstanding 2010 tax liability. See § 6402(a) (authorizing the Secretary to "credit the amount of [any] overpayment . . . against any liability in respect of an internal revenue tax on the part of the person who made the overpayment"). As these credits accumulated, Zuch gradually paid down the balance, and when it hit zero, the IRS moved to dismiss the Tax Court proceeding as moot. Because Zuch no longer owed any money, there was no longer any justification for a levy on her property. Thus, the IRS argued, the Tax Court lacked jurisdiction over the appeal from the collection due process hearing. (After all, the proposed levy was the hearing's raison d'être.) The Tax Court agreed, concluding that it had no freestanding "jurisdiction to determine an overpayment or to order a refund or credit of tax paid in a section 6330 proceeding." App. to Pet. for Cert. 43a. So if Zuch wanted to recover her overpayments—which would require her to prevail in her long-running dispute with the IRS about her 2010 tax liability—she would have to initiate a refund action. In short, she would have to start over.

Frustrated, Zuch appealed to the Third Circuit, which vacated the Tax Court's dismissal and held that the IRS's decision not to pursue the levy did not moot the Tax Court proceedings. 97 F. 4th 81, 86 (2024). The Third Circuit reasoned that § 6330(c)(2)(B) authorizes Zuch to raise " 'challenges to the existence or amount of the underlying tax lia-

bility,'" and Zuch still disputed the IRS's allocation of the $50,000 in estimated tax payments to her ex-husband. *Id.*, at 97–98. And in the Third Circuit's view, a declaration by the Tax Court in Zuch's favor would not be a dead letter because a declaration might be preclusive in a future refund proceeding by Zuch against the IRS. *Id.*, at 103–104.[1] So while the Tax Court could not itself order the IRS to give Zuch a refund, it could enter a declaration that Zuch might be able to use to secure one.

In reaching this conclusion, the Third Circuit acknowledged that it was "part[ing] ways" with the Fourth and D. C. Circuits, which have held that the Tax Court lacks jurisdiction over a collection due process proceeding when there is no longer an underlying levy. *Id.*, at 98; see *McLane* v. *Commissioner*, 24 F. 4th 316, 319 (CA4 2022); *Willson* v. *Commissioner*, 805 F. 3d 316, 321 (CADC 2015). We granted certiorari to resolve the split. 604 U. S. 1074 (2025).

## II

### A

"The Tax Court is a court of limited jurisdiction." *Commissioner* v. *McCoy*, 484 U. S. 3, 7 (1987) (*per curiam*); see also § 7442. The parties agree that the only jurisdiction-conferring provision applicable here is § 6330(d)(1), which states that the Tax Court "shall have jurisdiction" to "review" a "determination" made by an appeals officer in a collection due process hearing.

What matters, then, is the scope of a "determination" under § 6330(d)(1). As the Government sees it, a "determination" is simply a decision as to whether a levy may go forward; if there is no longer a proposed levy, there is no

---

[1] The Third Circuit also held that Zuch's claim was not moot on the theory that the IRS had unlawfully withheld her refunds and used them to offset her tax liability. See 97 F. 4th, at 94–97. Zuch has not defended this portion of the Third Circuit's reasoning, so we decline to consider it as an alternative ground for affirmance.

adverse determination of which the taxpayer may seek re-
view in the Tax Court. By contrast, Zuch argues that a
"determination" encompasses the appeals officer's resolution
of all the issues raised by the taxpayer at the collection due
process hearing. Here, the appeals officer concluded that
the $50,000 in estimated tax payments should be credited to
Gennardo. The Tax Court can still review that conclusion,
Zuch insists, even though the IRS abandoned the possible
levy. And Zuch contends that if the Tax Court agrees with
her, the IRS would then refund her the amount it had
withheld.

We agree with the Government: The "determination" in
§ 6330(d)(1) refers to the binary decision whether a levy may
proceed. Section 6330(c)(3), which sets forth the basis for
an appeals officer's "determination," states that it "shall take
into consideration" three things: (A) a verification that the
IRS has complied with "any applicable law"; (B) the "issues
raised" by the taxpayer; and (C) whether the levy "balances
the need for the efficient collection of taxes" against concerns
that a levy "be no more intrusive than necessary." The stat-
ute thus distinguishes between "consideration[s]" that in-
form the appeals officer's "determination" and the "determi-
nation" itself. In other words, the statute speaks in terms
of inputs (the three considerations articulated in §§ 6330(c)
(3)(A)–(C)) and an output (the appeals officer's ultimate "de-
termination"). Here, the dispute about Zuch's estimated tax
payments was an input into the "determination": an "issu[e]
raised" by Zuch that the appeals officer was required to
consider. § 6330(c)(3)(B). The "determination" was the ap-
peals officer's decision upholding the IRS's decision to issue
a levy.[2] App. to Pet. for Cert. 63a.

_____

[2] The dissent suggests that the Tax Court "may review the full scope of
a 'determination,' including its resolution of a taxpayer's 'unpaid tax' or
her 'underlying tax liability.'" *Post*, at 438 (opinion of GORSUCH, J.). In
our view, however, this begs the key question: What is a determination?
The dissent simply assumes that a determination incorporates the consid-

Statutory context also supports the Government's interpretation. Recall the default rule: Taxpayers cannot challenge disputes about tax liability without first paying the disputed taxes. § 7421(a). Had the IRS offset Zuch's overpayments against her tax bill without pursuing a levy, Zuch's only option would have been to sue for a refund. She was able to depart from the ordinary course only because the IRS proposed a levy, which triggered her right to a collection due process hearing. See § 6330(a)(1) ("No levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made"). So, as one might expect, § 6330 focuses on a proposed levy. The provision is titled "Notice and opportunity for hearing before levy." The notice must occur "not less than 30 days before the day of the first levy," § 6330(a)(2), and must include information about the levy, such as the statutory provisions "relating to levy and sale of property," "the procedures applicable to the levy and sale of property," and the "procedures relating to redemption of property and release of liens on property," § 6330(a)(3)(C). The scope of the hearing tracks its purpose: The taxpayer may raise only issues that pertain to the levy. See § 6330(c)(2)(A) ("any relevant issue relating to the unpaid tax or the proposed levy"); § 6330(c)(2)(B) ("challenges to the existence or amount of the *underlying* tax liability" (emphasis added)). Given § 6330's unwavering focus on levies and the default rule requiring postpayment suits, it would be strange if a taxpayer could use a § 6330 appeal to resolve tax disputes that no longer have any connection to an ongoing levy.

Finally, we are skeptical that the Tax Court has authority to provide any relief under § 6330(e) that goes beyond an order enjoining a levy. Section 6330(e)(1) authorizes the Tax Court to "enjoi[n]" "the beginning of a levy or proceed-

---

erations that inform it. But for the reasons we provide, that view is mistaken.

ing," but it may do so "only in respect of the unpaid tax or proposed levy to which the determination being appealed relates." The provision does not authorize the Tax Court to order a refund or to issue a declaratory judgment that resolves disputes about tax liability. Of course, as Zuch notes, the authority to issue injunctive relief against a levy necessarily includes the ability to make declarations about the validity of the tax obligations underlying it. But not when *there is no levy.* Without a levy, the Tax Court has no authority to render such conclusions.[3]

## B

Given these statutory constraints, the Tax Court properly dismissed Zuch's appeal. The appeals officer issued a "determination" that the IRS's proposed levy on Zuch's property could go forward. The Tax Court had jurisdiction to review that determination—that is, to decide whether the levy could (or could not) go forward. As part of that review, the Tax Court initially had authority to determine whether the appeals officer's predicate conclusions—like whether the $50,000 should have been credited exclusively to Gennardo— were correct.

Once the IRS used Zuch's overpayments to zero out the balance she allegedly owed, there was no longer any basis for a levy—thus, there was no relevant "determination" for the Tax Court to review. At this point, Zuch's appeal amounted to a request that the Tax Court issue an opinion on a disputed question of tax liability independent of any

---

[3] The dissent suggests that the Tax Court "could enjoin the IRS from pursuing 'any action' to seek or retain money from [Zuch] for [the 2010] tax year or from making any contrary decision about the matter." *Post,* at 439 (opinion of GORSUCH, J.). But there is nothing to enjoin, nor could there be. Because Zuch satisfied her outstanding tax liability, the IRS has no reason to try to "seek" money from Zuch. *Ibid.* In fact, that is the entire reason the IRS dropped its proposed levy. So the dissent's suggestion simply underscores why the Tax Court lacks jurisdiction to provide Zuch any further relief.

ongoing collection effort.   Because the Tax Court lacked jurisdiction to do so, it was right to dismiss the case.[4]

Of course, none of this means that Zuch lacks recourse against the IRS.   Like any taxpayer, she may file a postdeprivation suit for a refund, see 28 U. S. C. §§ 1346(a)(1), 1491(a)(1), which she has in fact already done, see Complaint in *Zuch* v. *United States*, No. 2:25–cv–01900 (D NJ, Mar. 14, 2025).

*    *    *

Because there was no longer a proposed levy, the Tax Court properly concluded that it lacked jurisdiction to resolve questions about Zuch's disputed tax liability.   The judgment of the Third Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE GORSUCH, dissenting.

Like many Americans, Jennifer Zuch wound up owing money on her taxes.   When the Internal Revenue Service told her that she had failed to pay all she owed for 2010, her (then) husband responded by paying the bill.   But instead of applying that payment to resolve her liability, the agency used the money to satisfy her husband's separate tax debt.   The agency did so even after Ms. Zuch's husband insisted the money was meant for her tab, not his.   Then, because it

---

[4] The parties have briefed the issues here primarily in terms of mootness.   It is indeed possible that the IRS's decision not to proceed with a levy mooted the proceedings in the Tax Court: If the Tax Court lacks the authority to issue the sort of preclusive declaratory judgment that Zuch seeks, then Zuch is effectively asking the court for an advisory opinion. And because the Tax Court applies principles of Article III jurisdiction to itself, this conclusion would have separately warranted dismissal.   See *Battat* v. *Commissioner*, 148 T. C. 32, 46 (2017).   We view our decision, however, as resting not on mootness but instead on the limits of the Tax Court's statutory jurisdiction under 26 U. S. C. § 6330.

deemed Ms. Zuch's liability still outstanding, the agency sought to seize and sell her property in a levy.

Ms. Zuch spent more than a decade challenging the IRS's moves before the agency and, later, the Tax Court. Finally, just as the Tax Court was poised to rule, the IRS moved to dismiss Ms. Zuch's case. It did not do so because it admitted its mistake in crediting her husband's payment to the wrong account. Instead, the agency told the court, it had determined that Ms. Zuch overpaid her taxes in later years, and it had decided to keep (rather than refund) those overpayments to satisfy her (disputed) 2010 debt. So, the IRS continued, a levy was no longer needed and the court should therefore dismiss the case. The Tax Court agreed, reasoning that the IRS's decision to drop the levy deprived it of jurisdiction over the dispute. See 97 F. 4th 81, 88–91 (CA3 2024).

The Court endorses that decision. I would not. Ms. Zuch still had a live claim pending before the Tax Court. She argued that the IRS erred by failing to credit her husband's payment to her tax debt, so she owed the agency nothing for 2010. Had she prevailed on that claim, the IRS would have had no basis for keeping her overpayments in later years. Nothing prevented the Tax Court from saying as much. Today's decision holding otherwise leaves Ms. Zuch with no meaningful way to pursue her argument that the IRS erred or to recoup the overpayments she believes the IRS has wrongly retained. Along the way, the Court's decision hands the IRS a powerful new tool to avoid accountability for its mistakes in future cases like this one.

I

To see where the Court and I differ, a little background helps. As many taxpayers know, the IRS can collect unpaid taxes by seizing and selling a taxpayer's property in a levy. But, before the agency can take that step, it must afford the taxpayer an opportunity to request a hearing before the

IRS's in-house Office of Appeals. 26 U. S. C. § 6330(b). At the hearing, the taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy" and (if she hasn't previously had the chance to do so) challenge "the existence or amount of [her] underlying tax liability." § 6330(c)(2).

After the hearing, the Office of Appeals issues a "determination." § 6330(c)(3). By statute, a "determination by an appeals officer . . . shall take into consideration" various matters. *Ibid.* They include whether the IRS has followed all "applicable" legal rules, whether a levy is "no more intrusive than necessary," and whether the IRS has explained away the "issues raised" by the taxpayer—which, remember, may include a challenge to the "unpaid tax" or to the "underlying tax liability." §§ 6330(c)(1)–(3).

Once the Office of Appeals issues a "determination," the taxpayer can seek review in the Tax Court—another administrative tribunal within the Executive Branch. See Part III, *infra.* Section 6330(d)(1) provides that a taxpayer "may, within 30 days of a determination under this section, petition the Tax Court for review of such determination (*and the Tax Court shall have jurisdiction with respect to such matter*)." (Emphasis added.) If the Tax Court concludes that the Office of Appeals erred, it may "enjoin any action or proceeding . . . in respect of the unpaid tax or proposed levy to which the determination being appealed relates," § 6330(e)(1), or else "remand [the] case" to the Office of Appeals for further proceedings, Internal Revenue Manual § 8.22.9.16(1) (Nov. 13, 2013); see also, *e. g., Drake* v. *Commissioner*, 92 TCM 37, 44 (2006).

II

Where should all this leave Ms. Zuch? As the above sketch illustrates, the Tax Court's jurisdiction over her case hinged on the presence of a timely appealed "determination" by the Office of Appeals. *Ante*, at 426–427, 431. Everyone agrees

we have that here.   As we have seen, too, a "determination" may address whether a taxpayer actually owes any "unpaid tax" or has any "underlying tax liability."   §§ 6330(c)(1)–(3). Everyone agrees we have that here too, for the "determination" in Ms. Zuch's case both approved a levy *and* rejected her argument that she had already fully satisfied her 2010 tax bill thanks to her husband's payment.   Brief for Petitioner 9; *ante*, at 431.

Those undisputed facts should lead to a straightforward conclusion: Because the Tax Court had before it a valid determination, it had jurisdiction to review all the issues addressed in that determination, including whether the IRS was wrong to say Ms. Zuch owed money for 2010.   Had the Tax Court ruled for Ms. Zuch on that issue, its decision would have had other important consequences too, for it would have deprived the IRS of its sole justification for keeping, rather than refunding, Ms. Zuch's later overpayments. The fact that the IRS announced its intention to drop its levy is immaterial.   Nothing in the statute before us suggests that the IRS can deprive the Tax Court of jurisdiction simply by withdrawing a levy.   To the contrary, three key features of the statutory scheme we have already encountered preclude that conclusion.

First, § 6330(d)(1) governs the Tax Court's jurisdiction.   It provides that the Tax Court "shall have jurisdiction" over "such matter"—a phrase that refers back to the Office of Appeals's "determination" in the taxpayer's case under § 6330(c)(3).   See *Boechler* v. *Commissioner*, 596 U. S. 199, 204–205 (2022); accord, *ante*, at 428.   That command is mandatory, and it nowhere uses the word "levy."   The absence of that term is telling, too, given that Congress used it almost 30 times elsewhere in § 6330.   Had Congress wished the Tax Court's jurisdiction to rise and fall with a levy, it obviously knew how to say so.   Congress's decision instead to link jurisdiction to a "determination" is one we must respect, not

allow the IRS to rewrite as it pleases.   See *Feliciano* v. *Department of Transportation*, 605 U. S. 38, 46 (2025).

Second, §6330(c)(2) provides that a "determination" may address not just an up-or-down decision on a levy but also other matters raised before the Office of Appeals, including a taxpayer's claim that she has no "unpaid tax" or "underlying tax liability."   And, the statute tells us, resolution of those issues forms the "[b]asis" for the determination, §6330(c), supplying textual evidence that "a determination incorporates the considerations that inform it," contra, *ante*, at 429–430, n. 2.   Confirming as much, the Tax Court itself has observed that its "jurisdiction is defined by the scope of the determination" and, as a result, it may consider "challenges to the existence or amount of the underlying tax liability" if "raised by the taxpayer" and resolved by the Office of Appeals.   *Freije* v. *Commissioner*, 125 T. C. 14, 25 (2005); accord, *Sego* v. *Commissioner*, 114 T. C. 604, 610 (2000); 26 CFR §301.6330–1, A–F3 (2024).   As we have seen, the Office of Appeals's determination in this case expressly addressed Ms. Zuch's claim that she had no unpaid taxes or underlying liability for 2010.

Third, §6330(e)(1) grants the Tax Court the power to issue injunctions against "any action or proceeding . . . in respect of the unpaid tax *or* proposed levy to which the determination being appealed relates."   (Emphasis added.)   That disjunctive phrasing suggests the Tax Court may enjoin "any" IRS "action" relating to the "unpaid tax"—even if the action is not a "proposed levy."   §6330(e)(1); see *Encino Motorcars, LLC* v. *Navarro*, 584 U. S. 79, 87 (2018).   Potential IRS actions relating to an "unpaid tax" include various "collection alternatives," §6330(c)(2)(A), and decisions about "whether [a tax] liability remains unpaid," Brief for Petitioner 25, n. 3 (internal quotation marks omitted; emphasis deleted); see 97 F. 4th, at 88.   Accordingly, had the Tax Court found that Ms. Zuch owed nothing for 2010, it could have wielded its remedial authority under §6330(e)(1) to enjoin the IRS from en-

gaging in "any action" to collect that debt. An injunction could stop the IRS from asserting its entitlement to retain Ms. Zuch's later overpayments. See Part IV, *infra*.[1]

Until recently, even the IRS would have agreed with all this. As the IRS once put it, a "motion to dismiss" is "inappropriate" in the Tax Court proceedings as long as a taxpayer (as here) still contests "the existence or amount" of her tax liability. Dept. of Treasury, IRS Office of Chief Counsel, Notice CC–2003–016 (May 29, 2003). Nor would it matter, the IRS continued, if the taxpayer had already "paid" the disputed tax—a development that, pretty plainly, would avoid any need for a levy. *Ibid.*; accord, IRS Notice CC–2005–008 (May 19, 2005); 97 F. 4th, at 100–101, and n. 36. Now, of course, the IRS has changed its mind and taken just the opposite view. But, when the government switches position and advances a new statutory construction that tilts the playing field in its favor, "no one should be surprised if its latest utterance isn't the most convincing one." *Bittner* v. *United States*, 598 U. S. 85, 98, n. 5 (2023).

## III

At the IRS's urging, the Court today upholds the Tax Court's dismissal of Ms. Zuch's claims. In doing so, the Court embraces the agency's (present) view that the Tax Court is powerless to resolve a § 6330 case once the IRS abandons a levy. But the three arguments the IRS advances (and the Court adopts) in support of that conclusion do not come close to proving it.

---

[1] The Court says there is no action left to enjoin in Ms. Zuch's case because the IRS already has her money. *Ante*, at 431, n. 3. But everyone agrees that Ms. Zuch may still seek a refund for at least some (but not all) of the overpayments in later years. *Ante*, at 432; Part IV, *infra*. And an injunction here could prevent the IRS from taking actions in those proceedings asserting its entitlement to the money. Even beyond that, there is the possibility that the IRS would heed the Tax Court's view of Ms. Zuch's case and refund all her later overpayments. Part III, *infra*.

The IRS first posits that the word "determination" in § 6330(d)(1) "refers to the binary decision whether a levy may proceed." *Ante*, at 429; Brief for Petitioner 19. So when the Office of Appeals issues a "determination," the IRS says, that office simply decides whether a levy is appropriate. And given that, the IRS extrapolates, the Tax Court's jurisdiction must also be limited to assessing the propriety of a levy. See *id.*, at 19–21.

The statute the IRS imagines is not the statute we have. Congress did not say that a "determination" refers to a binary decision whether a levy may proceed. Instead, Congress said that the Tax Court may review the full scope of a "determination," including its resolution of a taxpayer's "unpaid tax" or her "underlying tax liability." §§ 6330(c)(2), (d)(1). Congress discussed levies in many other places in § 6330 and it easily could have said that the Tax Court may review only a "determination *whether the levy may go forward.*" Yet nothing like that italicized condition appears in Congress's work.[2]

Next, the IRS suggests that the Tax Court's jurisdiction must be limited to assessing levies because the only remedy it can issue is an order directing the government "*not* to pursue a levy." Brief for Petitioner 20. Along similar but more restrained lines, the Court expresses "skeptic[ism]"

---

[2] Seeking a textual hook for its view that a "determination" really means a "levy," the Court observes that a "determination" must be something separate from the "considerations" that inform it, like the taxpayer's underlying liability. *Ante*, at 429. That hardly helps. Of course, a "determination" is not the same as the issues it resolves. But that does not mean the Tax Court is powerless to review the considerations that inform a "determination." Indeed, the Court admits that the Tax Court *can* attend to such "predicate conclusions" while a levy is ongoing. *Ante*, at 431. So why would things play out differently once the IRS no longer intends a levy? As even the government concedes, abandoning a levy does not withdraw or vacate an adverse IRS "determination." Tr. of Oral Arg. 11–12.

that the Tax Court's remedial authority extends beyond enjoining a levy. *Ante*, at 430–431.

Whether full-throated or half-hearted, that argument, too, disregards the statute's terms. Remember, § 6330(e)(1) permits the Tax Court to enjoin "any action" by the IRS relating to the "unpaid tax *or* the proposed levy." See Part I, *supra*; cf. *ante*, at 430–431. So, if the Tax Court were to conclude that Ms. Zuch is right—that her husband paid her bill and she owes nothing for 2010—then it could enjoin the IRS from pursuing "any action" to seek or retain money from her for that tax year or from making any contrary decision about the matter. And, as we have seen, that relief would effectively foreclose the agency from asserting any lawful entitlement to Ms. Zuch's overpayments in later years.

The IRS's remedial theory suffers another flaw, too. Sometimes, of course, developments during litigation that leave an Article III court powerless to issue any binding relief can present a jurisdictional problem. The Constitution, after all, authorizes federal courts to entertain only live cases and controversies, not moot ones where it is no longer possible "to grant any effectual relief" to the parties. *Chafin* v. *Chafin*, 568 U. S. 165, 172 (2013). But, as the Court seems to recognize, *ante*, at 432, n. 4, that constitutional constraint does not apply to the Tax Court. Name notwithstanding, that body is not part of the Judicial Branch. Instead, it exercises Article II "[e]xecutive authority as part of the Executive Branch." *Kuretski* v. *Commissioner*, 755 F. 3d 929, 932 (CADC 2014).[3] So when the Tax Court addresses a tax dispute and returns it to the Office of Appeals,

_____

[3] See also *Crim* v. *Commissioner*, 66 F. 4th 999, 1000 (CADC 2023) (holding that the Tax Court remains "part of the Executive Branch" notwithstanding a statutory amendment, § 7441, confirming its "indepeden[ce]"); *Freytag* v. *Commissioner*, 501 U. S. 868, 912 (1991) (Scalia, J., concurring in part and concurring in judgment) ("It seems to me entirely obvious that the Tax Court, like the Internal Revenue Service, . . . exercises executive power").

it is just one executive agency advising another about how to enforce federal law in a particular setting. And even without an injunction compelling it to do so, the Office of Appeals may choose to follow the Tax Court's views when carrying out its duty to resolve "tax controversies . . . to the maximum extent possible through an administrative settlement." Internal Revenue Manual § 8.1.1.1.1 (Jan. 9, 2024). For taxpayers like Ms. Zuch, that may be all the relief they need.

Without statutory text on its side, the IRS resorts to legislative history. Citing a committee report, the agency contends that Congress meant for § 6330 proceedings in the Tax Court to be rare and few, and for most "[c]hallenges to the assessment of a tax" to be brought in "post-payment refund suits" or "pre-payment deficiency actions" in federal district court. Brief for Petitioner 23 (citing S. Rep. No. 105–174 (1998)); see *ante*, at 430. That background rule, the IRS says, counsels against reading § 6330 to allow the Tax Court to entertain disputes after the government abandons a levy.

But even if refund suits and deficiency actions were once the usual ways for individuals to contest their tax liabilities, nobody disputes that Congress afforded taxpayers a new way of doing so when it adopted § 6330. And taxpayers are entitled to expect that provision will be applied as written, not whittled down to a nub to suit the IRS. See *Feliciano*, 605 U. S., at 54; *Epic Systems Corp.* v. *Lewis*, 584 U. S. 497, 525 (2018).

## IV

Recognizing that today's decision leaves Ms. Zuch, after a decade of litigation, without resolution of her straightforward argument that the IRS erred when it concluded she had not paid her 2010 tax bill, the agency invites her to "start over." *Ante*, at 427. All she has to do, the IRS says, is file a new refund suit in federal district court. There, she can make all the arguments she sought to press in the Tax Court.

And, if she prevails, she can secure a refund of the overpayments the agency kept to satisfy her (disputed) 2010 debt. See Brief for Petitioner 15, 34; *ante,* at 432. But that is no answer. More nearly, it is a trap for the unwary.

The reason has to do with a statutory deadline. Taxpayers may not pursue refund suits until they have filed administrative claims with the IRS, something they must accomplish "within 3 years from the time the return was filed or 2 years from the time the tax was paid," whichever period ends later. §6511(a). Yet a taxpayer who chooses to contest her tax liability in §6330 proceedings may not know that she needs to file such an administrative claim until the time for doing so has passed. See Brief for Center for Taxpayer Rights as *Amicus Curiae* 19–21.[4]

Ms. Zuch's case illustrates the problem. The government deemed her 2010 tax debt "paid" when it kept overpayments she made in 2013–2016 and 2019. 97 F. 4th, at 91. To seek the return of those overpayments, Ms. Zuch needed to submit an administrative claim with the IRS within two years of when the agency kept each payment. §6511(a). Yet for a couple reasons, she did not know that she had any need to file a claim. See 97 F. 4th, at 91. For one, she was actively litigating §6330 proceedings and understandably thought that was sufficient unto the day. For another, it appears the government did not tell her that she had overpaid her taxes in 2013–2016 and 2019, or that it intended to use those overpayments to satisfy her (disputed) 2010 tax liability, until it moved to dismiss her case in the Tax Court. 97 F. 4th, at 91, n. 19. Consequently, Ms. Zuch had no reason to think administrative refund claims might be necessary, or even available, until that point. And by the time she filed a re-

---

[4] Though §6330(e)(1) automatically suspends the limitations period for filing a refund suit in district court during the pendency of Tax Court proceedings, the government contends that it does not automatically suspend the period for filing an administrative claim. See Tr. of Oral Arg. 24–25, 28; accord, *id.,* at 44–45.

fund suit in district court, it was too late for her to submit prerequisite administrative claims for some (but not all) of the years in question and thus too late for the court to adjudicate her entitlement to refunds for those years. See Tr. of Oral Arg. 28, 44–45. So the IRS's invitation for Ms. Zuch to "start over" really turns out to be little more than an effort to deprive her of complete relief.

\*

The short of it all is this. The IRS seeks, and the Court endorses, a view of the law that gives that agency a roadmap for evading Tax Court review and never having to answer a taxpayer's complaint that it has made a mistake. After today, § 6330 proceedings are essentially risk-free for the IRS. It may pursue a levy and argue its case to the Tax Court. Then, if the Tax Court seems likely to side with the taxpayer, the IRS can drop the levy and avoid an unfavorable ruling on the taxpayer's underlying tax liability. Doing so will often prove only a small setback for the IRS because the agency remains free to pursue other collection methods— including keeping, rather than refunding, a taxpayer's later overpayments. And the taxpayer will often find herself without any way to challenge the IRS's error or prevent the agency from keeping more of her money than it is lawfully due. Seeing nothing in the law compelling any of those results, I respectfully dissent.

## Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

None